**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| LINWOOD E. WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV1065 |
| | ) | |
| THE COUNTY OF DURHAM, NORTH CAROLINA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

This case comes before the Court on Plaintiff's Application for Leave to Proceed *In Forma Pauperis* (Docket Entry 1), filed in conjunction with Plaintiff's pro se Complaint (Docket Entry 2), as well as on the Motion to Allow Plaintiff Linwood Wilson to Use the CM/ECF System to File Documents Electronically (Docket Entry 4). (<u>See</u> Docket Entry dated Dec. 6, 2011.) For the reasons that follow, the Court will grant Plaintiff's Application to proceed as a pauper solely for the purpose of allowing consideration of a recommendation of dismissal and, in light of that recommendation, will decline to permit electronic filing.

<u>I. LEGAL BACKGROUND</u>

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure

the costs.'" <u>Nasim v. Warden, Md. House of Corr.</u>, 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting <u>Adkins v. E.I. DuPont de Nemours & Co.</u>, 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." <u>Nagy v. Federal Med. Ctr. Butner</u>, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the <u>in</u> <u>forma</u> <u>pauperis</u> statute provides that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (ii) fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2).

A complaint fails to state a claim on which relief may be granted when it does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). In other words, the applicable standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the

2

elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

## II. FACTUAL BACKGROUND

Plaintiff's pro se Complaint asserts that "[t]his is a civil action for damages and injunctive relief under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, 42 U.S.C. § 1988(b), and the common law of the State of North Carolina and the State of Delaware." (Docket Entry 2 at 6.) It alleges the following facts:

Plaintiff's then-wife, Defendant Barbara Wilson, "had been caught in an ongoing affair with her boss [at the Durham Coca-Cola Bottling Company], [Defendant] Joseph Curtis, II, on many occasions" from at least November of 2006 through April of 2010. (Id. at 16.) On April 22, 2010, after several weeks of Plaintiff and his wife attempting to make the marriage work (id. at 18-28),

---

[1] Although the Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

Defendant Curtis appeared at the home shared by Plaintiff and his wife (id. at 20-21). Plaintiff "proceeded to inform Defendant Curtis 'don't come into my home, push me out of the way, and disgrace me, my wife and my home this way or I'll blow your f___king head off," at which point Defendant Curtis left. (Id. at 21.)

Several days later, Plaintiff and his wife argued and she threatened to take her own life. (Id. at 28-29.) Plaintiff became concerned and called a doctor who advised him to have his wife involuntarily committed for treatment. (Id. at 29-30.) At some point thereafter, Plaintiff's wife met with Defendant Christin Reimann, a domestic violence investigator for the Durham County Sheriff's Department (id. at 14), who assured her that "if Plaintiff tried to have her committed that Defendant Reimann would personally have it stopped" (id. at 32).

Plaintiff's wife then went to Delaware, where her sister, Defendant Nancy Robbins, resides (see id. at 25), and met with Defendant Robbins and Defendant David Weaver, an investigator for the Delaware State Police (id. at 9). "On June 3, 2010, [Plaintiff's wife] petitioned the Family Court of Delaware for a protective order against Plaintiff" which was granted "even though the facts didn't show any abuse or violence occurring in Delaware." (Id. at 32.)

Defendants Robbins, Weaver, Reimann, and Curtis, as well as Plaintiff's wife, "made a 'rush to judgment' and manufactured

4

charges, to have Plaintiff charged with things that they knew he had not committed, in order to get a fugitive warrant against Plaintiff and to get him into the Delaware's [sic] jurisdiction." (<u>Id.</u> at 39.) Said Defendants "rushed to have Plaintiff [] in jail on June 25, 2010 because Plaintiff [] had posted on his personal email address (AIM) that something was going to happen in the divorce action June 25, 2010 so watch the television and newspapers." (<u>Id.</u>) Defendant Reimann "believed Plaintiff was going to harm Defendant Curtis" on June 25, 2010, and thus encouraged charges against him. (<u>Id.</u>)

A grand jury in Delaware indicted Plaintiff on charges of felony stalking, seven counts of misdemeanor harassment, and five counts of criminal contempt of the protective order. (<u>Id.</u> at 55.) Plaintiff turned himself in on the resulting warrant. (<u>Id.</u> at 39-40.) At a subsequent hearing, Defendant Weaver "[told] the judge what a threat to society that Plaintiff [] was and that Plaintiff had threatened to kill Defendant Curtis, in North Carolina at Durham Coca-Cola with a gun." (<u>Id.</u> at 40.) Defendant Weaver also indicated that he possessed a letter allegedly written by Plaintiff threatening Defendant Curtis and his family. (<u>Id.</u>) According to the Complaint, "[n]one of the information that Defendant Weaver had maliciously stated was truthful and was meant to taint the court against Plaintiff . . . ." (<u>Id.</u>)

5

On July 15, 2010, while Plaintiff was in Delaware to answer the above-referenced charges, "[Defendant] Reimann and approximately 5 other Durham County Sheriff's deputies broke into Plaintiff['s] [] home with a search warrant, drawn up by Defendant Reimann." (Id. at 43.) The Complaint alleges that this search warrant was obtained on behalf of the Delaware State Police but that "[e]verything in the search warrant was for a case on Plaintiff [] in North Carolina, where no complaint or domestic violence order was executed." (Id. at 43-44.) The Complaint further alleges that Defendant Reimann made a false statement as part of her affidavit in support of the search warrant (id. at 45) and that the officers did not follow certain required procedures during the search (id. at 46).

Based on the foregoing allegations, Plaintiff's Complaint pursues claims for: (1) "Malicious Prosecution and Seizure in Violation of 42 U.S.C. § 1983"[2] (id. at 54-56); (2) "Concealment of Evidence in Violation of 42 U.S.C. § 1983" (id. at 56-57); (3) "Fabrication of False Evidence in Violation of 42 U.S.C. § 1983" (id. at 57-58); (4) "Violations of 42 U.S.C. § 1983 (Monell v. Dep't of Social Servs., 436 U.S. 658 (1977))" (id. at 59-68); (5) "Supervisory Violations of 42 U.S.C. § 1983" (id. at 68-72); (6) "Conspiracy in Violation of 42 U.S.C. § 1983" (id. at 72-74);

---

[2] The cause of action headings in the Complaint appear in all capital letters. (See Docket Entry 2.) For ease of reading, the Court uses standard capitalization here.

6

(7) "Conspiracy in Violation of 42 U.S.C. § 1985(2)" (<u>id.</u> at 74-76); (8) "Conspiracy in Violation of 42 U.S.C. § 1985(3)" (<u>id.</u> at 76-77); (9) "Conspiracy in Violation of 42 U.S.C. § 1986 (Durham County Sheriff's Department and ABC Police, Delaware State Police)" (<u>id.</u> at 78-80); (10) "Malicious Prosecution and Conspiracy" (<u>id.</u> at 80-81); (11) "Obstruction of Justice and Conspiracy" (<u>id.</u> at 81-83); (12) "Intentional Infliction of Emotional Distress and Conspiracy" (<u>id.</u> at 83-84); (13) "Negligence by Durham County Sheriff's Department, ABC Police, and the Delaware State Police" (<u>id.</u> at 84-85); (14) "Negligent Supervision, Hiring, Training, Discipline, and Retention by Durham County Sheriff's Department, Durham County ABC Police, Delaware State Police, State of Delaware Family Court, Delaware Attorney Generals [sic] Office and Kent County, DE Prosecutors [sic] Office" (<u>id.</u> at 85-87); (15) "Negligent Infliction of Emotional Distress by Durham County Sheriff's Department, Durham County ABC Police and Delaware State Police" (<u>id.</u> at 87-88); (16) "Negligent Infliction of Emotional Distress by Durham County Sheriff's Department, and Delaware State Police (Durham Sheriff's and Delaware State Police Statements)" (<u>id.</u> at 88-89); (17) "Violation of Article I, Section 19 of the North Carolina Constitution" (<u>id.</u> at 89); and (18) "Violation of Delaware Code Ann. Tit. 10, § 4011, 10, § 4012, 10, § 4013, 10, § 4001, 10, § 4002, 10, § 4003, 10, § 4005, However, the purchase of insurance constitutes a waiver of the government entity's

sovereign immunity. *Holden v. Bundek*, 317 A.2d 29 (Del. 1972)" (<u>id.</u> at 89-90).

## III.  DISCUSSION

### A. Malicious Prosecution

The Complaint's first claim, for malicious prosecution in violation of Plaintiff's Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, arises from criminal proceedings commenced against Plaintiff in Delaware.  (<u>Id.</u> at 54-56.)  "A malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.  To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor."  <u>Evans v. Chalmers</u>, 703 F.3d 636, 647 (4th Cir. 2012) (internal citations and quotation marks omitted).

The Complaint alleges that a grand jury in Delaware indicted Plaintiff on "1 Felony Stalking charge [], 7 misdemeanor Harassment charges [] and 5 criminal contempt of Domestic Violence Order . . . ."  (Docket Entry 2 at 55.)  It further asserts that "[n]ine of the criminal prosecutions terminated in favor of Plaintiff," although it specifies neither which nine, nor the form of the allegedly favorable termination.  (<u>Id.</u>)

8

As an initial matter, Plaintiff's suit would undermine state criminal convictions. The Complaint indicates that four of the thirteen charges against Plaintiff did not terminate in his favor. (See id.) Plaintiff may not use this action to call into question state criminal convictions without first showing that such convictions have been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or, finally, called into question by a federal court through the issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Plaintiff has failed to do so, thus making dismissal proper.

Moreover, the Court properly may take judicial notice of the plea agreement Plaintiff entered into with respect to the charges referenced in the Complaint. (See Plea Agreement, Case No. 1006021866, Superior Court of the State of Delaware in and for Kent County.)[3] In said agreement, Plaintiff pleaded guilty to charges

---

[3]    "The [C]ourt may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see also Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not precluded in our review of the complaint from taking notice of items in the public record . . . ."); Hall v. Virginia, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (endorsing the taking of judicial notice of data on state website in connection with analysis of legal sufficiency of complaint); Stiles v. Marsh, No. 1:13CV86RJC, 2013 WL 3455942, at *1 n.1 (W.D.N.C. July 9, 2013) (unpublished) (taking judicial notice of conviction records on "North Carolina Department of Public Safety web site" for purposes
(continued...)

1 and 2 (harassment) and 8 and 13 (criminal contempt of a PFA). (Id.) The agreement also notes that, "[u]pon sentencing of the defendant, a *nolle prosequi* is entered on . . . all remaining charges on this case." (Id.) The prosecution thus decided not to pursue the remaining charges as a result of the plea agreement, rather than due to Plaintiff's actual innocence as required to sustain a malicious prosecution claim under § 1983. See White v. Brown, 408 F. App'x 595, 599 (3d Cir. 2010) ("That the dismissal of those charges resulted from [the plaintiff's] plea agreement with the prosecution, and not his innocence, means that he cannot establish favorable termination for purposes of a § 1983 action for malicious prosecution."); Key v. Miano, C/A No. 1:11-1613-DCN-SVH, 2012 WL 5398194, at *3 (D.S.C. Oct. 10, 2012) (unpublished) ("Because there is no indication in the record that [the] [p]laintiff's indictment was nolle prossed for reasons consistent with his innocence, this was not a favorable disposition of [the] [p]laintiff's charge."); Restatement (Second) of Torts § 660 (1977) ("A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if (a) the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused . . . .").

---

[3](...continued)
of initial screening of pro se complaint under 28 U.S.C. § 1915A).

Furthermore, the Complaint conclusorily states that "[t]here was no realistic probable cause for any of the criminal prosecutions of [] Plaintiff." (Docket Entry 2 at 55.) However, it also notes that a grand jury indicted Plaintiff on each of the charges (id.), but nowhere asserts that the grand jury received inaccurate information (see id.). "It has long been settled by the Supreme Court that 'an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause.'" Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012) (some internal quotation marks omitted) (quoting Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975)). Although the Complaint conclusorily alleges that Defendants "made a 'rush to judgment' and manufactured charges" (Docket Entry 2 at 39), it does not describe how any actions by Defendants contributed to the grand jury's indictments. For all of these reasons, the Complaint fails to state a claim for malicious prosecution pursuant to § 1983.

## B. Concealment/Manufacture of Evidence

Plaintiff's second and third claims allege that various Defendants concealed and/or manufactured evidence in an attempt to hide Plaintiff's innocence from the grand jury. (Id. at 56-58.) As an initial matter, as discussed previously, see Section III.A., to the extent these claims undermine the state criminal convictions against Plaintiff, such claims cannot proceed. Heck, 512 U.S. at 486-87. Moreover, as to the concealment claim, the Complaint makes

11

only conclusory allegations that Defendants Reimann, Weaver, Whitfield, Richardson, Wilson, Curtis, Robbins, and Kelleher, "acting individually and in concert, concealed evidence of Plaintiff's actual innocence to manufacture probable cause, to secure indictments of Plaintiffs [sic], and ultimately to secure convictions of Plaintiff." (Id. at 56.) The Complaint does not identify the nature of any evidence the above-named Defendants allegedly withheld. It therefore fails to state a claim. See Iqbal, 556 U.S. at 678.

The Complaint further alleges that Defendants Reimann, Weaver, Kelleher, and Whitfield "abused their authority and positions as law enforcement officers in order to obtain false statements that they could use to manufacture probable cause, to secure indictments of Plaintiffs [sic], and ultimately in the criminal proceedings instituted against Plaintiff, and/or to prevent Plaintiff from securing a proper bond." (Id. at 58.) It also contends that Defendants Reimann, Weaver, Curtis, and Whitfield "manipulated letters threatening the life of Defendant Curtis and his family knowing that letter would be used to manufacture probable cause, to possibly secure indictments of Plaintiff, and ultimately in the criminal proceeding instituted against Plaintiff." (Id.) The Complaint asserts that these alleged actions deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments. (Id.)

12

The Fourth Circuit recognizes "'the right not to be deprived of liberty as a result of the fabrication of evidence by a governmental officer acting in an investigating capacity.'" Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005) (quoting Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000)). To demonstrate this right, a plaintiff must "pro[ve] that [the defendant] fabricated evidence and that the fabrication resulted in a deprivation of [the plaintiff's] liberty." Id.

To the extent the allegedly fabricated evidence led to Plaintiff's arrest and subsequent prosecution, this claim calls into question Plaintiff's state law convictions and therefore fails as a matter of law. Heck, 512 U.S. at 486-87.[4] Moreover, to the extent the allegedly fabricated evidence did not contribute to Plaintiff's arrest and subsequent convictions, Plaintiff has not alleged that the alleged fabrication resulted in a constitutional deprivation of liberty.

The Complaint first alleges that Defendants obtained false statements. (Docket Entry 2 at 58.) The claim itself does not identify the nature of any such statements. (Id.) In the facts section, the Complaint alleges that, at some point, Plaintiff's wife lied in statements she gave to Defendant Weaver (see id. at

---

[4]      In Washington, the governor of Virginia pardoned the plaintiff after post-conviction DNA testing conclusively excluded him from participation in the crime of conviction, thus removing the subsequent § 1983 case from the purview of Heck. Washington, 407 F.3d at 276.

32), but it does not indicate that Defendant Weaver had knowledge of any falsehoods (id.). Additionally, the Complaint alleges that, at a hearing before a justice of the peace (apparently to address bond), Defendant Weaver testified that Plaintiff threatened to kill Defendant Curtis with a gun in North Carolina, a statement that Defendant Curtis (and Plaintiff's wife) later indicated was unsupported by any information given to Defendant Weaver. (Id. at 40.)

As an initial matter, the state court released Plaintiff after that hearing and Defendant Weaver apparently did not succeed in his attempt to have Plaintiff's bond raised. (Id. at 41.) Plaintiff therefore suffered no deprivation of liberty. Moreover, the Complaint acknowledges that Plaintiff threatened Defendant Curtis's life. (See id. at 21 ("'[D]on't come into my home, push me out of the way, and disgrace me, my wife and my home this way or I'll blow your f__king head off[.]'").)

The Complaint also alleges that Defendants "manipulated letters threatening the life of Defendant Curtis and his family." (Id. at 58.) However, as previously discussed, Defendant Weaver's testimony regarding such threats did not cause the court to detain Plaintiff. (Id. at 41.) Moreover, the Complaint indicates that the charges against Plaintiff involved alleged conduct towards Defendants Wilson and Robbins, not Defendant Curtis. (Id. at 55.) Therefore, any testimony or evidence of alleged conduct by

14

Plaintiff against Defendant Curtis did not cause charges that deprived Plaintiff of liberty. The Complaint therefore fails to state a claim for violation of a constitutional right as the result of fabrication of evidence.

### C. Supervisory Claims

The Complaint's fourth and fifth causes of action allege a variety of supervisory § 1983 violations against several individual Defendants in their official and individual capacities, as well as the County of Durham, North Carolina, and the County of Kent, Delaware. (See Docket Entry 2 at 59-72.) To the extent Plaintiff has lodged the instant claim(s) against a local governmental entity and/or against persons in their official capacities, "it must be shown that the actions of [persons employed by such an entity] were unconstitutional and were taken pursuant to a custom or policy of the entity." Giancola v. State of W. Va. Dep't of Pub. Safety, 830 F.2d 547, 550 (4th Cir. 1987) (emphasis added) (citing Monell v. Department of Soc. Servs., 436 U.S. 658, 690-92, and observing that official capacity suits actually target employing entity); accord Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997) ("[L]ocal governmental bodies . . . may not be held liable under § 1983 solely because [they] employ[] a tortfeasor. . . . Instead, in Monell and subsequent cases, [the Supreme Court] ha[s] required a plaintiff seeking to impose liability on a [local governmental body] under § 1983 to identify

15

a [local governmental] 'policy' or 'custom' that caused the plaintiff's injury."). Accordingly, Plaintiff must show that a "constitutional injury [wa]s proximately caused by a written policy or ordinance, or by a widespread practice that is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 954 (M.D.N.C. 2011) (Beaty, C.J.) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)), rev'd in part on other grounds, 703 F.3d 636 (4th Cir. 2012). Plaintiff's Complaint makes no allegation that the events it describes resulted from a particular policy or custom promulgated by any of the relevant governmental bodies. (See Docket Entry 2.) Nor does the Complaint set forth factual matter sufficient to establish that the named supervisory Defendants had policymaking power in their respective organizations and/or to identify any policy or custom promulgated by said Defendants. (Id.)

Moreover, several of the supervisory Defendants the Complaint names are state officials. State officials acting in their official capacities do not constitute "persons" for purposes of § 1983 liability. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). The Complaint's claims against the Delaware Attorney General supervisory Defendants, the Delaware State Police supervisory Defendants, and the Family Court of Delaware supervisory Defendants thus fail to the extent they identify those

16

Defendants in their official capacities. See Buchanan v. Gay, 491 F. Supp. 2d 483, 493 (D. Del. 2007) (identifying Delaware State Police as state agency not subject to § 1983 claims); Poole v. Brady, No. Civ.A.05-233-JJF, 2005 WL 3307067, at *2 (D. Del. Dec. 2, 2005) (unpublished) (finding Delaware Family Court is state entity immune from § 1983 suits); Manchester v. Rzewnicki, 777 F. Supp. 319, 326 (D. Del. 1991) (recognizing Attorney General of the State of Delaware and Deputy Attorneys General as state officials and thus not subject to § 1983 official capacity suits).

In addition to the official capacity claims, the Complaint alleges various claims concerning failure to supervise, to control, and/or to train against the supervisory Defendants in their individual capacities. (Docket Entry 2 at 68-72.) "Supervisory officials may be liable under § 1983 [in their individual capacities] if '(1) . . . the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) . . . the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices []"; and (3) . . . there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'" McFadyen, 786 F. Supp. 2d at 963 (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994))

17

(alterations provided by <u>McFadyen</u>).  Other recent authority has further fleshed out the foregoing requirements:

> To meet the first requirement, the plaintiff must proffer evidence that the misconduct has occurred on other occasions or is "widespread." [<u>Shaw</u>, 13 F.3d at 799.] Further, to establish that the supervisor's response is deliberately indifferent, the plaintiff must show the supervisor's "'continued inaction in the face of documented widespread abuses,'" which is a "heavy burden." *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984)).  Finally, the plaintiff may show an affirmative causal link between the supervisor's response and the plaintiff's injury when the injury is a "natural consequence[ ]" of the supervisor's inaction. *Id.* at 800 (quoting *Slakan*, 737 [F.2d] at 376).

<u>Goodwin v. Beasley</u>, No. 1:09CV151, 2011 WL 238640, at *1 (M.D.N.C. Jan. 24, 2011) (Tilley, J.) (unpublished).  For the reasons that follow, the Court should dismiss these individual capacity claims.

### 1.  *Durham County Supervisory Defendants*

The factual allegations contained in the Complaint against the Durham County supervisory Defendants (i.e., Defendants Ruffin, Hill, Andrews, Martin, Ladd, Harris, Davis, and McMillian) based on any alleged supervisory authority fail for several reasons.  First, the Complaint contains no allegations whatsoever against Defendants Ruffin, Ladd, Harris, or McMillian, except to identify their employment responsibilities in the "PARTIES" section. (<u>See</u> Docket Entry 2.)  Moreover, the Complaint does not allege "widespread" misconduct of which any of the Durham supervisory Defendants knew, and certainly does not allege "continued inaction in the face of documented widespread abuses," <u>Shaw</u>, 13 F.3d at 799.  At most, it

18

alleges only conclusorily that Defendants "had contemporaneous knowledge through the chain of command that [Defendants] Reimann[] and Whitfield was [sic] conducting manipulative investigative procedures that violated constitutional standards." (Docket Entry 2 at 59.) It further states that the supervisory Defendants gave Defendant Reimann authority to investigate Plaintiff, "had actual or constructive knowledge that [she] had no reason to continue any investigation against Plaintiff," and "had actual or constructive knowledge that [she] had authorized and/or personally engaged in decisions from which it would have been plainly obvious . . . that violations of Plaintiff's constitutional rights inevitably would occur" (id. at 60-62). These conclusory allegations do not meet the "heavy burden," Shaw, 13 F.3d at 599, of establishing deliberate indifference.

Furthermore, the claims against these supervisors fail for the same reasons the claims against the subordinates fail. To the extent they call into question Plaintiff's state criminal convictions, these claims cannot proceed under Heck, 512 U.S. at 486-87. To the extent they do not call the convictions into question, as discussed previously, the Complaint fails to state a claim of constitutional deprivation by the subordinates, see supra, Sections III.A. & B. "There can be no liability under § 1983 on the party of a supervisory official in the absence of a

constitutional violation on the part of those supervised." <u>Huggins</u> <u>v. Weider</u>, 105 F. App'x 503, 506 (4th Cir. 2004).

      2.   *Delaware State Police Supervisory Defendants*

The Complaint's claims against supervisory Defendants within the Delaware State Police (i.e., Defendants Coupe, Paige, Purcell, and Simpson) fail for similar reasons. First, the Complaint again does not make any specific allegations against any of these Defendants, except to outline their employment responsibilities in the "PARTIES" section. (<u>See</u> Docket Entry 2.) Moreover, it again only conclusorily alleges that these Defendants collectively "had contemporaneous knowledge through the chain of command that [Defendant] Weaver was conducting manipulative investigative procedures that violated constitutional standards" (<u>id.</u> at 63) and that "[i]t would have been plainly obvious to a reasonable policymaker" that Defendant Weaver's conduct would deprive Plaintiff of his constitutional rights (<u>id.</u>; <u>see also</u> <u>id.</u> at 63-65). Such conclusory allegations do not suffice to state a claim against the Delaware State Police supervisory Defendants. In addition, as discussed previously, <u>see</u> <u>supra</u>, Section III.C.1., claims against these supervisory Defendants fail because they call into question Plaintiff's criminal convictions, <u>see</u> <u>Heck</u>, 512 U.S. at 486-87, or, alternatively, because the Complaint fails to articulate a claim against the subordinate, Defendant Weaver, <u>see</u> <u>Huggins</u>, 105 F. App'x at 506.

20

### 3. Delaware Family Court Supervisory Defendants

The Complaint next alleges that supervisory Defendants within the Delaware Family Court system (i.e., Defendants Mange, Kuhn, and Nicholas) "failed to take adequate or meaningful steps to discipline [Defendant] Jones, [a Delaware Family Court Commissioner (Docket Entry 2 at 11),] or correct his behavior, when they had knowledge that he had issued a [restraining order], even by default, that he knowingly had no jurisdictional authority over" (id. at 66). Although suffering from all of the same defects as the allegations against other supervisory defendants described above, see supra, Sections III.C.1. & 2., this allegation fails on a more fundamental level in that it calls into question a judicial act (or failure to act). "Judges performing judicial acts within their jurisdiction are entitled to absolute immunity from civil liability claims." In re Mills, 287 F. App'x 273, 279 (4th Cir. 2008); see also Jones v. Meconi, Civil Action No. 05-332 GMS, 2006 WL 2819762, at *5 n.4 (D. Del. Sept. 30, 2006) (unpublished) ("Commissioners of the Family Court are entitled to judicial immunity because they perform most of the same functions as a Family Court judge."). In order to "correct" Defendant Jones' judicial action (i.e., issuing a restraining order), the Delaware Family Court supervisory Defendants would have to act in their capacity as judicial officers to reverse or dismiss said order. Such action, or decision not to act, is absolutely immune from

civil liability claims. See In re Mills, 287 F. App'x at 279. Furthermore, any "failure to take adequate or meaningful steps to discipline [Defendant] Jones" (Docket Entry 2 at 66) beyond reversing his issuance of the restraining order would have had no effect on Plaintiff or his case in the Delaware courts and thus cannot serve as the basis for a cognizable § 1983 claim.

### D.  Conspiracy

The Complaint next alleges a series of conspiracy claims:

(1) that several Defendants "conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves to deprive Plaintiff of his constitutional rights by charging and prosecuting him on charges which these Defendants knew were not supported by probable cause" in violation of 42 U.S.C. § 1983 (Docket Entry 2 at 73);

(2) that several Defendants "conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of impeding, hindering, obstructing and defeating the due course of justice in the States of North Carolina and Delaware, with the intent to deny Plaintiff the equal protection of the laws" in violation of 42 U.S.C. § 1985(2) (id. at 75);

(3) that several Defendants "conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of depriving, either

22

directly or indirectly, Plaintiff of the equal protection of the laws and of his equal privileges and immunities under the laws" in violation of 42 U.S.C. § 1985(3) (id. at 77); and

(4) that several supervisory Defendants "had prior knowledge of the wrongs conspired to be committed" by various Defendants, "had the power to prevent or aid in preventing the commission of [said] wrongs . . . but [] neglected and/or refused to exercise such power" in violation of 42 U.S.C. § 1986 (id. at 78-79).

Each of these claims apparently relates to Plaintiff's criminal prosecution in Delaware. As discussed previously, see supra Section III.A., Plaintiff may not pursue claims that call into question prior convictions without first showing that such convictions have been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or, finally, called into question by a federal court through the issuance of a writ of habeas corpus, Heck, 512 U.S. at 486-87. "Because [Plaintiff] has made no [such] showing . . . his claims are not cognizable under § 1983 or under 42 U.S.C. § 1985[]." Poston v. Shappert, 222 F. App'x 301, 301 (4th Cir. 2007) (citing with approval Stephenson v. Reno, 28 F.3d 26, 26-27 & n.1 (5th Cir. 1994), which applies holding in Heck to 42 U.S.C. § 1985 claim); see also Browdy v. Karpe, 131 F. App'x 751, 753 (2d Cir. 2005) (applying holding in Heck to plaintiff's §§ 1983, 1985, and 1986 claims).

23

Plaintiff's only remaining claims arise under state law.[5] "[I]n any civil action of which the district courts have original jurisdiction, the district courts have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, "the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right . . . . [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). In light of the recommended dismissal of the federal claims at the pleading stage and the

---

[5]     Plaintiff's tenth and eleventh causes of action – "MALICIOUS PROSECUTION AND CONSPIRACY" and "OBSTRUCTION OF JUSTICE AND CONSPIRACY," respectively – do not specifically invoke North Carolina law. (See Docket Entry 2 at 80-83.) However, particularly in light of the fact that Plaintiff has separate claims for malicious prosecution and obstruction of justice under federal law (see id. at 54-56, 72-76), the Court interprets these claims as falling under North Carolina law.

absence of grounds for the exercise of diversity jurisdiction,[6] the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and, instead, should dismiss those claims without prejudice.

IV. CONCLUSION

Plaintiff's Complaint fails to state a viable federal claim and the Court should decline to hear the related state claims.

**IT IS THEREFORE ORDERED** that Plaintiff's Application for Leave to Proceed In Forma Pauperis (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that the federal claims in this action be dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim and for seeking damages against Defendants with immunity from such relief and that the related state claims be dismissed under 28 U.S.C. § 1367(c)(3).[7]

---

[6]     The Complaint identifies Plaintiff as "a citizen and resident of North Carolina" (Docket Entry 2 at 7) and numerous Defendants as citizens of and/or organizations incorporated in North Carolina (id. at 11-15). Such circumstances cannot satisfy the diversity jurisdiction statute. See 28 U.S.C. § 1332(a); Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005) ("[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action.").

[7]     This Recommendation urges dismissal of several of the claims in part because they impermissibly call into question Plaintiff's state criminal convictions in violation of Heck, 512
(continued...)

**IT IS FURTHER ORDERED** that the Motion to Allow Plaintiff Linwood Wilson to Use the CM/ECF System to File Documents Electronically (Docket Entry 4) is **DENIED.**

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

November 8, 2013

---

[7](...continued)
U.S. at 486-87. Courts generally dismiss claims under Heck without prejudice to the plaintiff refiling his claim should he meet the Heck requirements in the future. See, e.g., Goldman v. Brannon, No. 5:11-CT-3051-FL, 2013 WL 5217771, at *7 (E.D.N.C. Sept. 17, 2013) (unpublished); Caldwell-Bey v. Poll, No. 3-13-cv-212-RJC, 2013 WL 1800016, at *2 (W.D.N.C. Apr. 29, 2013) (unpublished).